MONTALVO, DEMANDANTE Y APELADO, *v.* MONTALVO ET AL.,
DEMANDADOS Y APELANTES.

APELACIÓN procedente de la Corte de Distrito de Mayagüez
en pleito sobre filiación.

No. 1647.—Resuelto en noviembre 23, 1917.

FILIACIÓN—HIJOS NATURALES—NACIMIENTO DEL DEMANDANTE.—No es un error perjudicial en pleito sobre reconocimiento de hijo natural, el admitir una certificación de muy poca o ninguna fuerza probatoria en sí misma, para acreditar la fecha del nacimiento del demandante, cuando existen otras pruebas más que suficientes que establecen dicho hecho.

ID.—ENMIENDAS A LA DEMANDA EN EL ACTO DEL JUICIO.—No es demasiado tarde para el demandante enmendar su demanda en el acto del juicio, en el sentido de incluir la frase ''y se halla en la posesión continua del estado de hijo natural'' y permitirle la corte aducir prueba adicional en apoyo de la enmienda, cuando no ha concluído su caso el demandante.

ID.—ENMIENDAS A LA DEMANDA DESPUÉS DE PRESENTADA EXCEPCIÓN PERENTORIA DE FALTA DE HECHOS Y MOCIÓN DE NON-SUIT.—Después de concluído su caso el demandante, los demandados excepcionaron la demanda por no alegarse en ella hechos suficientes para constituir una causa de acción, esto es, por no alegarse que la madre natural y el padre putativo del demandante al tiempo de la concepción, podían casarse con dispensa o sin ella, y al mismo tiempo presentaron uno moción de *non-suit* por falta de prueba sobre ese particular. El demandante entonces pidió permiso para enmendar su demanda y ampliar su prueba, que la corte le concedió, negando simultáneamente. la excepción y moción de los demandados. *Se resolvió:* que si bien hubiera sido más lógico sostener primero la excepción perentoria y conceder luego la moción del demandante, no existe regla alguna que obligue al juez inferior a resolver la moción de *non-suit* antes de considerar la cuestión de la enmienda, y que habiéndose concedido el permiso para enmendar y para ampliar la prueba, la suficiencia de los hechos previamente probados convirtióse en una mera cuestión académica.

ENMIENDA A LA DEMANDA—DISCRECIÓN JUDICIAL.—Las cortes de primera instancia por lo general están investidas de amplia discreción en cuestiones de enmiendas a la demanda en el acto del juicio y ampliación de la prueba sobre el particular, que debe ser liberalmente ejercitada para bien de la justicia, y siempre que se ejercita sin perjuicio de los derechos sustanciales de las partes, las cuestiones técnicas de mero procedimiento han de recibir escasa consideración en apelación.

FILIACIÓN—RECONOCIMIENTO POR UN MENOR—DISPENSA LEGAL.—Un menor puede reconocer a un hijo natural y la dispensa mencionada en el artículo 119 del Código Civil no es necesariamente la dispensa legal en puro tecnicismo del derecho canónico o del Código Civil.

ID.—DISPENSA LEGAL—HIJO CONCEBIDO FUERA DE MATRIMONIO.—No solamente en el caso de la formal autorización a que se refiere el artículo 45 del Código Civil Español en que el padre de una persona sujeta a tutela releva a ésta de la incapacidad para contraer matrimonio autorizando éste en testamento o escritura pública, se encuentra un hijo que haya sido concebido fuera de ma-

trimonio, dentro de la definición que da el código del hijo natural, sino que, aun de otro modo, dada la posibilidad de tal ''dispensa,'' debe ésta presumirse, y los términos en que se halla redactado el código deben interpretarse de modo que se incluyan todos aquellos casos en los cuales pudiera haber desaparecido el impedimento legal.

Filiación—Posesión de Estado de Hijo Natural.—La posesión de estado a que se refiere el Código Civil, consiste en el concepto público en que fué tenido el hijo en relación a su padre natural, cuando este concepto se forma por actos directos del mismo padre o de su familia, demostrativos de un verdadero reconocimiento perfectamente voluntario, libre y espontáneo, puesto que el referido cuerpo legal no autoriza la pesquisa de la paternidad ni impone consiguientemente tal reconocimiento contra la voluntad del padre, sin que aparte de eso, sea preciso se haga tan ostentosamente como si fuera un hijo legítimo, habida cuenta de las ideas y consideraciones que puedan existir en las relaciones sociales; quedando por lo tanto la misión de los tribunales, dentro de esta doctrina, reducida a apreciar en cada caso la índole, trascendencia y alcance de los actos de reconocimiento atribuídos al padre natural o a su familia.

Los hechos están expresados en la opinión.

Abogados de los apelantes: *Sres. Angel Arroyo Rivera, y Benjamin J. Horton.*

Abogado del apelado: *Sr. José Benet.*

El Juez Asociado Sr. Hutchison, emitió la opinión del tribunal.

''*No tan lento como la majestad camina, tomada por medida y unidad de movimiento; no tan rauda como la legendaria Holganza Olímpica pudiera rondar, con su amplia vestidura intocada por el viento, de placer en placer.* * * *''* fué el desarrollo de este pleito en la corte inferior, aunque los procedimientos del juicio vacilaron a veces en su marcha, un poco más de lo que la anterior cita parece indicar. Realmente, de no haber los abogados de los demandados hecho en la corte inferior oportunas y provechosas sugestiones señalando los fatales defectos de que adolecían las alegaciones, y las deficiencias de la prueba, adicionada a todo esto la benévola actitud de un tolerante juez sentenciador, el resultado final hubiera sido de lo más desastroso para el demandante. Llamamos la atención sobre este punto, no tanto con ánimo de censura como por lo notable de la ilustración que se nos presenta así del riesgo que debe evitarse por el demandante como

la labor que puede economizárseles a todas las partes inte-
resadas, incluyendo a las. cortes, con la hábil preparación de
un caso meritorio antes de entrar en juicio.

El demandante introdujo su prueba en 25 de enero de 1916,
suspendiéndose el juicio hasta el 4 de febrero, y mediante es-
tipulación de las partes volvióse a posponer hasta el día
9 de febrero del propio año. Los demandados excepcionaron
la demanda, el día últimamente mencionado, por falta de causa
de acción y presentaron una moción de *non suit,* y la corte
después de oir los informes de los letrados se reservó su re-
solución hasta febrero 15 del mismo año. El día 11 se oyó
a las partes sobre si se le permitía o no al demandante en-
mendar su demanda después de cerrado su caso, y la corte
también se reservó su opinión sobre este punto. En 28 de
febrero presentó el demandante una moción por escrito pi-
diendo permiso para enmendar, acompañada de una copia de
su proyecto de primera demanda enmendada. En 21 de marzo
se ordenó otra vista para marzo 24, fecha en que la corte de-
claró sin lugar la excepción previa general y la moción de
*non suit,* admitió la demanda enmendada, y concedió al de-
mandante permiso para que adujese prueba adicional en apoyo
de la enmienda. La cuestión que dejó perplejo al juez sen-
tenciador no fué la de si procedía o no conceder una enmienda
a la demanda para conformarla con la prueba, sino más bien
sobre si, en el ejercicio de una sana discreción se puede per-
mitir a su demandante, que ya ha cerrado su caso sin haber
alegado en su demanda ni probado en juicio hechos suficientes
a constituir una causa de acción, enmendar su demanda a
fin de que aparezcan alegados los elementos esenciales omi-
tidos en la demanda original con el propósito de introducir
prueba en apoyo de semejantes alegaciones nuevas.

Entonces los demandados solicitaron se les concediese un
término de diez días para enmendar su contestación, que les
fué concedido. La contestación enmendada fué presentada en
31 de marzo.

Volvió a llamarse el caso para juicio el día 4 de mayo,

y entonces se presentó una nueva excepción previa fundada en que la demanda enmendada no aducía hechos bastantes para constituir una causa de acción. La corte después de haber oído los informes de las partes sostuvo la excepción previa y volvió a conceder al demandante permiso para enmendar, dando a los demandados permiso para contestar, y señaló el día 9 de mayo para la vista del caso.

En 5 de mayo se radicó la segunda demanda enmendada, y la corte entonces prorrogó el término para contestar hasta el 12 de mayo, para cuya fecha se volvió a señalar el juicio del caso.

El juicio se terminó definitivamente en 16 de mayo, dictándose sentencia en 28 de agosto de 1916, por la que se declaraba al demandante-apelado hijo natural de Juan José Emiliano Montalvo y Bermúdez, con los demás pronunciamientos en casos de esta naturaleza.

Se han señalado los errores siguientes:

1º. La corte erró al admitir la certificación de nacimiento de Emilio Gonce, otorgada en 28 de enero de 1916, en la cual se hacía constar que había nacido en 6 de mayo de 1893.

2º. La corte cometió error al admitir la enmienda solicitada por el demandante de enmendar el Párrafo IV de su demanda en el sentido de incluir la frase "y se halla en la posesión continua del estado de hijo natural."

3º. La corte erró al admitir como prueba la fe de baustismo de un·tal Emilio, hijo de Agripina González.

4º. La corte erró al declarar sin lugar la primera moción de *nonsuit* y la excepción previa general.

5º. La corte erró al·declarar con lugar la moción del demandante pidiendo permiso para enmendar su demanda y para ampliar su prueba, y permitiendo y admitiendo la prueba ofrecida para ampliar su caso el demandante.

6º. La corte erró al declarar que Emilio Montalvo Bermúdez podía casarse con Agripina Gonce allá en 1892 al 1893 sin autorización y consejo paterno de ambos.

7º. La corte erró al declarar que Agripina Gonce podía contraer matrimonio en el 1892 al 1893 siendo sólo de 18 años de edad.

8°. La corte erró al declarar sin lugar la última moción de *non-suit* y excepción previa general.

9°. La corte erró al declarar al demandante hijo natural reconocido de Emilio Montalvo Bermúdez basada en una prueba que era lo suficientemente robusta para sostenerla.

10°. La corte erró manifiestamente en la apreciación de la prueba.

Nos inclinamos a convenir con los apelantes en que la corte erró al admitir la certificación de nacimiento; pero este documento—de muy poca o ninguna fuerza probativa en sí mismo, aunque fuese admisible—fué un detalle omisible comparado con la prueba oral y demás prueba, que fué más que suficiente para establecer, aproximadamente al menos, la fecha del nacimiento. El error, si existió, no fué perjudicial.

Los apelantes en su segundo señalamiento de error surgieren que la enmienda citada expone simplemente una conclusión de derecho, y que en todo caso la moción para enmendar fué tardía. Parece que la cuestión apuntada sobre tal fraseología, no fué levantada en la corte inferior. El demandante no había concluído aún, cuando propuso la enmienda, como sucede en el quinto señalamiento, y no se ha hecho gran esfuerzo para demostrar, ni vemos nosotros, por qué la moción fué presentada demasiado tarde.

Los apelantes, al discutir el tercer señalamiento de error, asumen que la prueba documental del bautismo fué un certificado expedido por el párroco, lo que el apelado dice ser una hipótesis equivocada, debido, como lo sugiere el demandante, a que los abogados que tramitaron la apelación no fueron los que intervinieron en el juicio. El apelado dice que el párroco fué llamado a declarar y presentó los libros originales del archivo parroquial, siendo ofrecido como prueba el asiento del bautismo del demandante y admitido para establecer, no la fecha del nacimiento sino el hecho del bautismo verificado por un sacerdote a presencia de los padrinos, a fin de corroborar el testimonio de ciertos testigos que habían declarado con referencia a este particular.

Sobre este punto, del expediente sencillamente aparece lo siguiente:

"El demandante ofreció como prueba la partida de bautismo del demandante y los demandados se opusieron a la admisión de dicho documento, alegando que no es admisible como prueba en un pleito de filiación la partida de bautismo y por el fundamento de que, aun cuando el documento aparecía con un sello de rentas internas adherido al mismo, la firma que lo autorizaba no estaba debidamente autenticada y que la corte no podía tener conocimiento judicial de la firma de un párroco y por el fundamento también de que en dicho documento aparecía la persona bautizada como hijo de una llamada Agripina González y la prueba demostraba que el demandante era hijo de Agripina Gonce. La corte admitió en prueba el documento opinando que: 'El Registro de la Iglesia era un registro oficial antes del registro civil, pero después del registro civil ya es un registro particular; que se pueden probar los actos trayendo aquí los libros, pero no por medio de certificaciones; antes de existir el registro civil, ya entonces el verdadero registro civil eran los libros de la Iglesia, pero después ya dejó de ser esa prueba del estado civil de uno, y si se quiere probar el hecho del bautismo se pueden traer los libros con la persona que los tenga bajo su custodia. Los demandados tomaron excepción.' "

En esto no encontramos que se haya cometido grave error alguno. *Iturrino* v. *Iturrino,* 24 D. P. R. 467; *Delannoy* v. *Blondet,* 22 D. P. R. 237; *Figueroa* v. *Díaz,* 19 D. P. R. 717.

El cuarto error se refiere a un incidente mencionado ya. Después de haber concluído el demandante su caso, los demandados excepcionaron la demanda por no alegarse en ella hechos suficientes para constituir una causa de acción, por cuanto en la demanda no se alegaba que la madre y el padre putativo del demandante al tiempo de la concepción "podían casarse con dispensa o sin ella"; y al propio tiempo presentaron una moción de *non-suit* por falta de prueba sobre este particular. El demandante inmediatamente presentó una moción oral pidiendo permiso para enmendar la demanda y ampliar su prueba, solicitud que luego se reprodujo por escrito acompañada de una copia de su proyecto de demanda enmendada, según se ha hecho constar anteriormente. Al

parecer, ni el demandante ni la corte jamás abrigaron duda
alguna respecto a los méritos legales en puro tecnicismo sobre
la cuestión así levantada por los demandados, aunque el juez
sentenciador tuvo grandes dudas sobre si tenía o no facul-
tades para permitir, dadas las circunstancias del caso, la en-
mienda propuesta.   Aunque la corte al conceder la moción del
demandante simultáneamente declaró sin lugar la excepción
previa y la moción de *non-suit,* la opinión sobre la cual se
funda su orden trata solamente la cuestión de la enmienda
propuesta y re-apertura del caso, lo que claramente aparece
haber sido el punto único a que prestó su atención el juez
sentenciador. Sin duda alguna habría sido más lógico sos-
tener primero la excepción previa y conceder luego la moción
del demandante.   Verdaderamente, lo inadvertido de esta de-
cisión se ve luego por la circunstancia de que, en una sesión
subsiguiente, se volvió a presentar la misma excepción y fué
declarada con lugar, concediendo en seguida la corte, a su
propia iniciativa, al demandante permiso para enmendar,
resolución a la cual los demandados también tomaron excep-
ción, pidiendo después permiso y prórroga para contestar,
lo que les fué concedido por la corte.   No conocemos **regla**
alguna que obligue al juez inferior a resolver la moción de
*non-suit* antes de considerar la cuestión de la enmienda; y,
habiéndose concedido el permiso para enmendar y el permiso
para ampliar la prueba, la suficiencia de los hechos previa-
mente probados convirtióse en una mera cuestión académica.

Se ha dicho lo suficiente para demostrar que la enmienda
a que se refiere el quinto señalamiento de error no exponía
ninguna causa de acción completamente nueva sino que sen-
sillamente suplía la omisión, aparentemente por descuido,
de un pequeño elemento esencial al caso del demandante.
Las cortes de primera instancia por lo general están inves-
tidas de una amplia discreción en cuestiones de esta natu-
raleza, la que debe ser liberalmente ejercitada para bien de
la justicia, y siempre que se ejercite sin perjuicio de los
derechos sustanciales de las partes, las cuestiones técnicas de

mero procedimiento han de recibir escasa consideración en apelación. Aun cuando la imposición de términos y condiciones razonables en la mayoría de los casos habría de conducir a que se tuviese mayor cuidado en las alegaciones y en la presentación de la prueba, y aun cuando el abogado del demandante en este caso apenas si se hubiera podido quejar de haber adoptado la corte inferior la medida que acabamos de sugerir, no encontramos que haya cometido falta alguna la corte inferior al conceder al demandante permiso para enmendar su demanda y ampliar su prueba. Cualquiera otra línea de conducta hubiese dado por resultado dilaciones, inconvenientes y gastos, si no en definitiva un extravío de la justicia.

El artículo 119 del Código Civil, vigente en Puerto Rico a la fecha del nacimiento del demandante, define los hijos naturales en la siguiente forma:

"Son hijos naturales los nacidos, fuera de matrimonio, de padres que al tiempo de la concepción de aquéllos pudieron casarse sin dispensa o con ella."

Un menor puede reconocer a un hijo natural. 1 Manresa, 3ª. Edición, 564.

La dispensa mencionada en el artículo que acabamos de citar no es necesariamente la dispensa legal en puro tecnicismo del derecho canónico o del Código Civil. Según el artículo 45, citado por los apelantes,

"Les está prohibido el matrimonio:

"1º. Al menor de edad que no haya obtenido la licencia, y al mayor que no haya solicitado el consejo de las personas a quienes corresponde otorgar una y otro en los casos determinados por la ley.

"3º. Al tutor y sus descendientes con las personas que tenga o haya tenido un guarda hasta que, fenecida la tutela, se aprueben las cuentas de su cargo; salvo el caso de que el padre de la persona sujeta a tutela hubiese autorizado el matrimonio en testamento o escritura pública."

El impedimento entre tutor y pupila no es legalmente dis-

pensable. Solamente el padre del pupilo podía relevar a las partes de esta incapacidad, autorizando el matrimonio "en testamento o escritura pública.". Sin embargo, Manresa sostiene que no solamente en el caso de esta formal autorización se encuentra un hijo, que haya sido concebido fuera del matrimonio, dentro de la definición que da el código de un hijo natural pero aun de otro modo, dada la posibilidad de tal "dispensa," debe ésta presumirse y los términos en que se halla redactado el código deben interpretarse de modo que se incluyan todos aquellos casos en los que pudiera haber desaparecido el impedimento legal. *Comentarios al Código Civil,* por Manresa, Tomo I, página 535. De ser sana esta proposición las cuestiones levantadas bajo el sexto y séptimo errores quedan concluyentemente resueltas.

Los argumentos presentados bajo el octavo y noveno errores se refieren sólo a la suficiencia de la prueba.

En la última demanda enmendada se alegaba, entre otras cosas, lo siguiente:

"*Primero.* Que desde mediados del año 1891 hasta fines del año 1895, la madre de este demandante, Agripina Gonce, vivió en concubinato y bajo el mismo techo, sin interrupción, con Don Juan José Emiliano Montalvo y Bermúdez, vecino que fué de la ciudad de Mayagüez y generalmente conocido por Emilio Montalvo, siendo ambos solteros, sin que les uniera parentesco alguno de consanguinidad, o de afinidad, habiendo procreado de dicha unión un hijo, que es el demandante, que nació en la ciudad de Mayagüez, P. R., el día 6 de mayo de 1893; y tanto su madre Agripina Gonce como su padre natural Juan José Emiliano Montalvo y Bermúdez, mencionados, al tiempo de la concepción de este demandante allá por el mes de agosto del año 1892, y además con anterioridad y con posterioridad a esa fecha, estaban ambos en actitud de poderse casar sin dispensa.

*Segundo.* Que el citado Juan José Emiliano Montalvo y Bermúdez conocido por Emilio Montalvo, autorizó a este demandante a usar su propio nombre, atendió debidamente al demandante como padre, proveía a sus necesidades desde el momento de su nacimiento, pagaba su educación, y tanto privada como públicamente lo tuvo siempre por hijo suyo, y ofreció siempre reconocerlo como tal hijo; y siem-

pre ofreció llevar a cabo su propósito atendiendo al sostenimiento y educación de dicho demandante hasta el momento de su fallecimiento.

*Cuarto.* Que el demandante siempre se condujo, tanto en público como en privado, como hijo del citado Emilio Montalvo, fallecido, usó siempre su nombre en público y en privado y se hallaba en la posesión continua del estado de hijo natural de su citado padre, y le interesa probar su filiación por los medios que le concede la ley.''

Aun cuando la prueba respecto a estos particulares no es tan concluyente como desearse pudiera, sin embargo, si la corte inferior creyó las declaraciones de los testigos del demandante—como evidentemente las creyó—existe suficiente prueba para sostener la sentencia. La declaración de Agri pina Gonce parece haber sido en extremo franca, tiene otros indicios de veracidad, está corroborada en sus detalles esenciales, y cubre el caso por completo. :

La cuestión levantada bajo el décimo error está resumida en la proposición de que la corte inferior confundió la cuestión de la *posesión de estado de hijo natural,* que depende del *propósito* de un padre de poner a su prole en estado de hijo natural, con la de la *paternidad,* cuya investigación estaba prohibida por el Código Español.

El Tribunal Supremo de España, en su sentencia de 26 de junio de 1903, volumen 95 de la Jurisprudencia Civil, caso No. 194, página 1021, ha emitido la siguiente doctrina, que citamos del sumario:

''Que la posesión de estado a que se refiere el número dos del artículo 135 del Código Civil consiste en el concepto público en que es tenido un hijo en relación a su padre natural, cuando este concepto se forma por actos directos del mismo padre o de su familia, demostrativos de un verdadero reconocimiento perfectamente voluntario, libre y espontáneo, puesto que el referido cuerpo legal no autoriza la pesquisa de la paternidad, salvo lo dispuesto en el Código Penal, ni impone consiguientemente tal reconocimiento contra la voluntad del padre, sin que aparte de esto sea preciso se haga tan ostentosamente como si fuera un hijo legítimo, habida cuenta de las ideas y consideraciones que puedan existir en las relaciones sociales; quedando por lo tanto la misión de los tribunales, dentro de esta doctrina, reducida a apreciar en cada caso la índole, trascendencia y al-

cance ·de los actos de reconocimiento atribuídos al padre natural o a su familia.

"Que 'las circunstancias de cada caso son las que han de determinar el alcance y trascendencia de los actos significativos y demostrativos de la posesión continua del estado de hijo natural."

Un detenido estudio de todos los autos a la luz de la doctrina citada, nada revela que nos demuestre que se haya cometido error alguno que motive la revocación de la sentencia.

La sentencia apelada debe ser confirmada.

*Confirmada la sentencia apelada.*

Jueces concurrentes: Sres. Asociados Wolf y del Toro.

Los Jueces Sres. Presidente Hernández y Asociado Aldrey no intervinieron.