FIDEL GERENA, como defensor de la menor MARÍA ELADIA GONZÁLEZ, conocida por ROSA GONZÁLEZ, demandante y apelado, *v.* BARTOLO SUAU, demandado y apelante.

No. 3834.—*Visto:* junio 18, 1926.  *Resuelto:* Enero 21, 1927.

1. HIJOS NATURALES—RECONOCIMIENTO OBLIGATORIO—ACCIÓN DE RECONOCIMIENTO O FILIACIÓN—EVIDENCIA—SU SUFICIENCIA—ESTADO DE CONCUBINATO—Cuando la prueba no tiende a demostrar que las relaciones entre el padre putativo con la madre del supuesto hijo o hija natural fuera similar o muy cer-

cana al estado marital sino a aquella en que un hombre mantiene una querida (*mistress*) no cabe sostener el reconocimiento obligatorio, de un hijo tenido por la mujer contemporáneamente con tal relación, fundado tal reconocimiento en que los padres vivían en estado de concubinato.

2. HIJOS NATURALES—RECONOCIMIENTO OBLIGATORIO—ACCIÓN DE RECONOCIMIENTO o FILIACIÓN—EVIDENCIA—SU SUFICIENCIA—ACTOS DEL PADRE DEMOSTRATIVOS DEL RECONOCIMIENTO.—El que un padre putativo ayudara a la madre del supuesto hijo natural al tiempo del nacimiento y concepción de éste, jugara y fuera cariñoso con él y ayudara a mantenerlo y cosas por el estilo no constituye la prueba fuerte que la ley exige para demostrar el estado de reconocimiento, especialmente cuando la prueba no demuestra de una manera suficiente la intención por parte del padre de reconocer al hijo como suyo.

SENTENCIA de *Tomás Bryan,* J. (Aguadilla), declarando con lugar demanda de filiación, con costas y honorarios. *Revocada,* declarándose sin lugar la demanda.

*José Rodríguez,* abogado del apelante; *García Méndez & García Méndez,* abogados del apelado.

EL JUEZ ASOCIADO SEÑOR WOLF, emitió la opinión del tribunal.

Como introducción a este caso haremos un resumen de la opinión de la corte inferior en la siguiente forma: Fidel Gerena, como defensor de la menor María Eladia González, conocida por Rosa González, instó demanda en la Corte de Distrito de Aguadilla contra Bartolo Suau, a fin de que dicha corte declarara a dicha María Eladia González hija natural reconocida de Dolores González y Bartolo Suau; que dicha demanda decía que la citada menor María Eladia González nació en Puerto Rico el primero de marzo de 1906, siendo hija natural de Dolores González, a cuyo nombre no se había presentado la demanda porque ella tenía intereses opuestos a su citada hija; que el demandado Bartolo Suau durante la concepción y parto de la niña mencionada sostuvo relaciones carnales con la madre de ésta y como consecuencia de dichas relaciones nació la referida niña; que el demandado y la madre de la menor vivieron bajo un mismo techo y en concubinato y que ambos estaban en aptitud legal y sin impedimento alguno para contraer matrimonio, por ser solteros.

Entonces seguía una relación de algunos de los actos y

de la conducta del demandado mediante los cuales se alegaba el reconocimiento, alegándose también en la demanda que el demandado se había negado a reconocer a dicha menor a pesar de los esfuerzos tendientes a ese fin. También había una relación de las súplicas de la demanda. La corte entonces exponía la contestación general del demandado y hacía constar que el caso fué debidamente oído, citando luego el artículo del Código Civil aplicable al caso. La niña nació en 1906 y por consiguiente el artículo 189 del Código Civil, según regía entonces, es aplicable, como sigue (Estatutos Revisados de 1902, pág. 884):

"El padre está obligado a reconocer al hijo ilegítimo en los casos siguientes:

"1. Cuando exista escrito suyo indubitado en que expresamente reconozca su paternidad.

"2. Cuando pública o privadamente le tenga por hijo suyo o le haya llamado tal en conversación o se ocupe de su educación y sostenimiento.

"3. Cuando la madre fué conocida viviendo en concubinato con el padre al tiempo del embarazo o nacimiento del hijo, o cuando éste haya nacido llevando sus padres relaciones amorosas."

La corte resolvió que el caso debía regirse por los incisos 2 y 3 de dicho artículo. Luego seguía un resumen de la cita hecha por esta corte en el caso de *Montalvo* v. *Montalvo,* 25 D.P.R. 858, de la decisión de la Corte Suprema de España de junio 26, 1903, al efecto de que la posesión del estado de hijo natural "consiste en el concepto público en que es tenido un hijo en relación a su padre natural, cuando este concepto se forma por actos directos del mismo padre o de su familia, demostrativos de un verdadero reconocimiento perfectamente voluntario, libre y espontáneo, puesto que el referido cuerpo legal no autoriza la pesquisa de la paternidad, salvo lo dispuesto en el Código Penal, ni impone consiguientemente tal reconocimiento contra la voluntad del padre, sin que aparte de esto sea preciso se haga tan ostentosamente como si fuera un hijo legítimo, habida

cuenta de las ideas y consideraciones que puedan existir en las relaciones sociales; quedando por lo tanto la misión de los tribunales, dentro de esta doctrina, reducida a apreciar en cada caso la índole, trascendencia y alcance de los actos de reconocimiento atribuídos al padre natural o a su familia.

"Que las circunstancias de cada caso son las que han de determinar el alcance y trascendencia de los actos significativos y demostrativos de la posesión continua del estado de hijo natural."

La corte citó el caso de *Méndez* v. *Martínez,* 24 D.P.R. 242, en el que se dijo:

". . . . No creemos que es necesario para que exista un estado de concubinato que el hombre no deba tener otra residencia que la de la mujer . . . . semejante condición no es indispensable en un estado de matrimonio ni lo era para un estado de concubinato."

Entonces la corte de distrito dijo:

"En el presente caso hubo una prueba que no deja lugar a dudas en el ánimo del juzgador, de que Bartolo Suau, el demandado, tenía alquilada una habitación a Dolores González, y vivía con ella en concubinato y que tal estado de cosas existía durante la concepción y parto de la menor María Eladia González, que estas relaciones fueron continuas, no habiéndose conocido otro hombre que no fuera el demandado viviendo con la madre de la demandante, durante la concepción y parto de dicha menor, y mucho antes y después de los mismos, estando el demandado Bartolo Suau y Dolores González en aptitud legal y sin impedimento alguno para contraer matrimonio, por ser ambos de estado soltero.

"No cabe duda también que el demandado Bartolo Suau pagó los gastos de medicina y partera que asistió a la madre de la menor María Eladia González; y no cabe duda asimismo que Bartolo Suau se ocupaba de la niña o sea de la aquí demandante; la mandaba a buscar para estar con ella, le prodigaba sus besos y sus caricias, la admiraba y la ayudaba, y la trataba como su hija.

"El demandado presentó evidencia con el propósito de demostrar que él no dormía en la misma casa, que la madre de la menor María Eladia, queriendo asimismo demostrar que él dormía en su propio establecimiento, y que comía en casa de un hermano en el pueblo de Lares.

"Está fuera de toda discusión, puesto que la evidencia fué robusta en ese extremo, que Bartolo Suau visitaba casi todas las noches la casa que le tenía a su concubina Dolores González y que salía de ella a altas horas de la noche y por la mañana, entendiendo la Corte, que atendiendo todas las circunstancias de este caso, entre ellas la de que el demandado no tenía un hogar propio, la prueba es suficiente para dejar establecido el concubinato.

"La circunstancia de que el demandado pudiera tener un dormitorio en su establecimiento, no es prueba concluyente de la evidencia de un hogar propio más, aun cuando el testimonio del testigo principal del demandado, un empleado de éste, quedó destruído en gran parte por sus propias manifestaciones.

"La Corte cree que se ha establecido en este caso que Bartolo Suau, el demandado, privadamente y públicamente también tenía a María Eladia, conocida por Rosa González, como hija suya y la llamaba tal en sus conversaciones y se ocupaba de ella; y que Dolores González la madre de la demandante fué conocida viviendo en concubinato con el demandado Bartolo Suau, al tiempo del embarazo y nacimiento de María Eladia, conocida por Rosa González."

[1] Del resumen anterior se desprende que si bien la corte de distrito llega a la conclusión de hecho de que Bartolo Suau dijo algo y realizó actos tendientes al reconocimiento de María Eladia González como hija suya, sin embargo, un examen de toda la opinión tiende a convencernos de que la corte dictó sentencia a favor del demandante fundándose en el hecho de que Bartolo Suau y Dolores González vivían en estado de concubinato. Los hechos del caso de *Méndez* v. *Martínez, supra,* eran mucho más fuertes. En dicho caso el padre putativo vivía prácticamente en vida marital con la madre de los supuestos hijos naturales. En el presente caso, aceptando como ciertas todas las declaraciones de los testigos del demandante, la prueba no demuestra nada semejante a un estado de vida marital. Hubo prueba  tendiente a demostrar que Bartolo Suau pagaba el alquiler de la habitación ocupada por Dolores González; que la visitaba con mucha frecuencia, saliendo de la casa tarde en la noche o temprano en la madrugada, es decir, de 2 a 3 de la mañana. No hubo prueba de que él se quedara

con ella toda una noche.  No hubo prueba de que él comiera con ella.  No hubo prueba de esa clase de vida en que un hombre y una mujer constituyen un hogar juntos sin haber sido unidos solemnemente por los lazos del matrimonio, y no hubo nada que se acercara siquiera a tal estado de cosas.  Se admitió y reconoció por la corte que aunque Bartolo Suau no tenía lo que puede llamarse un hogar, sin embargo, dormía en su propio establecimiento y comía con su hermano.

La idea de un estado de concubinato, según indicamos en el caso de *Medina* v. *Sucesión de Bird et al.*, 30 D.P.R. 158, es una relación similar o muy cercana al estado marital.  Tal vez podría ser un poco menos que el estado marital y estaríamos dispuestos a reconocer un concubinato, pero un estado de concubinato debe diferenciarse de una relación en que un hombre meramente mantiene una querida (*mistress*).  Es cierto que Bartolo Suau pasaba muchas horas con Dolores González, pero no hallamos nada en la prueba que eleve la relación sostenida por Bartolo Suau con Dolores González a un estado de concubinato.  Aunque uno o dos testigos llegan a tal conclusión, los autos no demuestran nada parecido a que era de conocimiento público un estado de concubinato entre estas dos personas.

También hay la declaración de Bartolo Suau, a la que nos referiremos más tarde, en la cual él niega enfáticamente haber vivido en un estado de concubinato con nadie y su negativa está sostenida por las declaraciones de otras personas.

[2] El inciso 2 del artículo 189, *supra*, del Código Civil dice así:

"Cuando pública o privadamente le tenga por hijo suyo o le haya llamado tal en conversación o se ocupe de su educación y sostenimiento."

La Corte Suprema de España y esta corte frecuentemente han decidido que la prueba para demostrar tal estado

de reconocimiento según se establece en dicho inciso, debe ser fuerte. Admitiendo que Bartolo Suau ayudó a Dolores González al tiempo del nacimiento y la concepción de María Eladia González; que él jugaba con la niña y era cariñoso con ella y que ayudó hasta cierto punto a mantenerla y otras cosas por el estilo, esto no constituye la prueba fuerte que la ley exige. La prueba no demuestra, directa o indirectamente de una manera suficiente, la intención de parte de Bartolo Suau de reconocer a María Eladia como hija suya.

Lo siguiente aparece en la página 58 de los autos:

"Las partes convinieron en que Bartolo Suau, el demandado en el presente caso, sentado en la silla de los testigos, haría la siguiente declaración:

" 'Que su nombre es Bartolo Suau; que es mayor de edad, soltero, comerciante y vecino de Soller, Islas Baleares, España. Que a María Eladia González, conocida por Rosa, la conoció por habérsela presentado en el año 1921 don Fidel Gerena y que le extrañó que le dijese que era su hija, pues nunca con anterioridad a esa fecha ni Fidel Gerena ni nadie le dió esa noticia. Que conoció a Dolores González. Que en el año 1906 él vivía en Lares, Puerto Rico; que vivía en su almacén con sus hermanos y empleados y que allí no vivía ninguna mujer, ni en concubinato ni en ningún concepto; que no tenía ninguna otra casa en Lares, ni jamás ha vivido en concubinato con persona alguna.' "

Aunque la corte tiene perfecto derecho a hacer caso omiso de esta declaración de Bartolo Suau si se convence por otra prueba que los hechos por él declarados eran diferentes a como él los expone, no obstante, esta declaración merece algún grado de consideración. Sus manifestaciones pueden ser impugnadas como erróneas pero su credibilidad no puede ser atacada en la forma en que se atacarían las de otros testigos. Quizás el erudito abogado del apelado creyó que el efecto sería distinto cuando permitió que esta declaración constara en récord; no obstante, aparece en los autos y hay que darle algún peso. Esta declaración tiende fuertemente a reducir el peso de las declaraciones de los testigos del demandante.

Tampoco hallamos que se pusiera jamás a Dolores González en la silla de los testigos, ni se explicara su ausencia.

Toda la prueba, debidamente apreciada, es del todo consistente con una relación en que un hombre mantiene una querida (*mistress*) y es afectuoso con una niña tenida por ella contemporáneamente, pero no prueba suficientemente que de tales actos públicos o privados pueda inferirse la intención de reconocerla.

*La sentencia apelada debe ser revocada y declararse sin lugar la demanda.*

El Juez Presidente Señor del Toro no intervino en la resolución de este caso y el Juez Asociado Señor Hutchison disintió.