JOSÉ ANTONIO VÁZQUEZ, menor de edad, representado y asistido por su madre con patria potestad ÁUREA VÁZQUEZ, demandante y apelado, *v.* JOSÉ DE JESÚS, demandado y apelante.

Núm. 9161.—*Sometido:* Diciembre 26, 1945. *Resuelto:* Marzo 29, 1946.

---

(²)Véase *Morán & Cía.* v. *Corte*, 55 D.P.R. 637; *Vere* v. *Corte*, 54 D.P.R. 262.

*José A. Varona Pacheco*, abogado del apelante; *V. M. Sánchez Fernández*, abogado del apelado.

El Juez Asociado Señor Córdova emitió la opinión del tribunal.

De una sentencia declarando al menor demandante hijo natural del demandado, y condenando a éste a pasar a aquél $12.50 al mes por concepto de alimentos, apela el demandado.

■ Sostiene el apelante que la corte erró al declarar sin lugar su moción sobre nulidad de emplazamiento. No hubo error, ya que el apelante radicó su contestación a la demanda conjuntamente con su moción impugnando el emplazamiento, renunciando así a cualquier defecto en éste. [1]

■■ Sostiene además el apelante que erró la corte inferior al estimar la prueba suficiente para establecer la filiación, y al dar crédito a la prueba del demandante sobre este extremo.

Los testigos del demandante fueron su madre, su abuela materna y una tía de su madre.

---

[1] La regla 12*b* de las Reglas de Enjuiciamiento Civil no es de aplicación, por tratarse aquí de un procedimiento de alimentos, el cual no se rige por dichas reglas. (Véase la regla 81.)

La madre declara que conoció al demandado, un quinca-
llero, en la parada 15 de Santurce, que poco después de cono-
cerlo tuvo relaciones carnales con él, el 26 de junio de 1943,
y que luego el demandado iba todos los días, por espacio de
cinco meses, a la casa donde ella trabajaba, y allí se quedaba,
"él iba, dormía conmigo y después se iba para donde le daba
la gana", que ella quedó embarazada y él la llevó a casa de la
madre de ella, donde ya antes, al comenzar sus relaciones,
había ido una vez con ella de visita, la dejó allí, y no volvió
más, ni se ocupó del niño al nacer éste el 19 de marzo de
1944, a pesar de que se le mandó a avisar unas cuantas ve-
ces.   Nunca fué el demandante a visitar al niño, pero "él lo
ha visto y lo ha cogido en sus brazos y ha ido a la casa de una
amiga mía para verlo" y le ha dado dinero a la testigo en
tres ocasiones, $5 en junio cinco del 1944, $5 el 20 de junio y
$3 en septiembre del 1944, para los alimentos del niño.

La abuela materna corrobora la declaración de la madre
en lo que respecta a las dos visitas que hizo el demandado a
la casa de aquélla en compañía de ésta, una el 24 de junio de
1943, la segunda a los cinco meses del embarazo, cuando dejó
a la madre allí.   Dice que nunca más fué el demandado a su
casa "y no lo veí más," a pesar de que fué a Santurce a bus-
carlo, "lo buscaba para hablar con él y no lo veí".   Pero
añade que después de nacido el niño "a los cuarenta días yo
le llevé el niño," sin decirnos nada de lo que ocurrió en esa
ocasión.   Más tarde se le pregunta si volvió a ver al deman-
dado después de la segunda visita de éste a su casa y contesta
"No, señor, yo lo busqué y no me ví con él."

La tía materna sabe que el demandado y la madre del
demandante "llevaron amistad", porque la testigo trabajaba
en la casa contigua a aquélla en que trabajaba la madre, que
esa amistad duró unos cinco meses, y que durante ese tiempo
el demandado venía a buscar a la madre del demandante a
la casa donde ésta trabajaba, todas las noches, esperando el
demandado en el portón, y que salían así juntos todas las

noches, sin saber la testigo donde iban: "A las siete en punto estaba esperándola a ella en el portón de la casa . . . Yo los veía salir del portón de la casa hacia afuera." Nos dice que luego el demandado no se ocupó más de la madre, que no le ayudó en el alumbramiento, y que "no le ha dado nunca nada, ni ha visto el niño."

Las tres testigos del demandante admiten que la madre de éste tiene otro hijo, fruto de relaciones con otro hombre en época anterior a sus relaciones con el demandado.

El demandado admite que una noche conoció a la madre del demandante en la parada 15 de Santurce, y tuvo contacto carnal con ella en esa ocasión, pero niega siquiera haberla visto después. Dice que se enteró del embarazo y "de este asunto" cuando recibió una carta de un licenciado de Bayamón.

La corte inferior, después de hacer una breve exposición del testimonio de cada uno de los testigos, se limitó a expresar que "ha llegado a la conclusión de que en realidad el hijo habido en ese concubinato es del demandado" y a base de esa conclusión procedió a declarar al demandante hijo natural reconocido del demandado y a condenar a éste al pago de alimentos.

Dándole entero crédito a la prueba del demandante, como aparentemente hizo la corte inferior, tenemos que esta prueba no estableció que la madre del demandante viviera en concubinato con el demandado. Según nos describe la propia madre sus relaciones con el demandado, éste iba al cuarto de servicio de la casa donde ella trabajaba, tenía relaciones carnales con ella, y entonces "se iba para donde le daba la gana." Ya hemos resuelto que relaciones de ésta índole distan mucho del concubinato, concepto que en su esencia comprende la relación entre un hombre y una mujer que hacen vida de esposos sin serlo. *Colón* v. *Tristani*, 44 D.P.R. 171, 45 D.P.R. 227; *Gerena* v. *Suau*, 36 D.P.R. 170.

El error de la corte inferior al determinar que la madre

del demandante vivía en concubinato con el demandado conlleva la revocación de la sentencia, ya que no existe prueba de ninguno de los extremos que de acuerdo con el artículo 125 del Código Civil (Ed. de 1930) son necesarios para establecer la paternidad natural. Véase *Ortiz* v. *Dragoni,* 59 D.P.R. 14. Como dijimos en *Colón* v. *Tristani,* 45 D.P.R. 227, 238, 239,

"La prueba no debe limitarse y concretarse a descubrir quién fué el progenitor. Este no es más que un elemento probatorio que debe tomarse en cuenta en unión de otros actos, para establecer la condición de hijo natural. No hemos equiparado las relaciones de un hombre con su querida al estado de concubinato. Si así fuera, habríamos basado simplemente nuestra sentencia en las conclusiones de la corte inferior que declara probado que Josefa Colón fué la querida de Alberto J. Tristani, sin necesidad de ninguna argumentación. Nos habría bastado con decir que establecida la relación que considera probada la corte *a quo,* quedaba también establecida la condición de hijo natural del niño Alberto Colón. Por el contrario hemos dicho y creemos haberlo hecho con toda claridad, que esta prueba, robustecida y corroborada por otros actos del padre, puede ser suficiente para que se obtenga y recaiga una declaración de hijo natural".

En el caso citado hubo prueba de distintos actos del padre demostrativos de que tenía al niño por su hijo, o sea, de que éste estaba en la posesión del estado de hijo natural. Lo que se resolvió en *Colón* v. *Tristani,* supra, fué que, existiendo prueba de la paternidad, puede establecerse la posesión de estado de hijo natural con evidencia de actos aislados que en otras circunstancias no serían suficientes para ello.

En el caso de autos no aparece que el demandado en momento alguno haya tenido o considerado al demandante como su hijo. Es cierto que la madre declara que en tres ocasiones el demandado le envió dinero para los alimentos del demandante, pero las otras dos testigos del demandante nos dicen que el demandado nunca se ha ocupado del demandante para

nada, ni le ha ayudado. La prueba del propio demandante, por lo tanto, se encarga de establecer que en ningún momento le ha tenido el demandado por hijo suyo. Así lo debe haber entendido la corte inferior, al basar su sentencia exclusivamente en la existencia del concubinato.

*Debe revocarse la sentencia apelada y en su lugar dictarse otra declarando sin lugar la demanda.*