El Pueblo de Puerto Rico, demandante y apelado, *v.* Horacio Ortíz Altuna, acusado y apelante.

Núm. 12732.—*Sometido:* Noviembre 13, 1947. *Resuelto:* Diciembre 19, 1947.

*Frank Torres*, abogado del apelante; *Hon. Procurador General Luis Negrón Fernández*, y *J. Rivera Barreras* y *Alberto Picó Santiago*, *Fiscal* y *Fiscal Auxiliar del Tribunal Supremo*, respectivamente, abogados de El Pueblo, apelado.

EL JUEZ PRESIDENTE SEÑOR TRAVIESO emitió la opinión del tribunal.

Este caso se originó mediante denuncia jurada ante la Corte Municipal de Juana Díaz, alegándose en ella que el acusado apelante Horacio Ortiz Altuna es padre del menor Horacio Rodríguez, y como tal, se ha negado y se niega a proveerle desde hace más de tres años los alimentos prescritos en el artículo 263 del Código Penal vigente.

El día 25 de octubre de 1946 se celebró la vista del caso en grado de apelación en la Corte de Distrito de Ponce y el acusado fué declarado culpable y sentenciado a un mes de cárcel, pero se dispuso que dicha sentencia quedaría en suspenso a condición de que el acusado pase al menor la cantidad de $5 semanales.

Señala el acusado cuatro errores que a su juicio cometió la corte inferior, de los cuales los dos primeros van dirigidos a la apreciación que de la prueba hizo la corte inferior.

Alega el acusado apelante que la corte erró al resolver, como resolvió, que la ley y los hechos están en contra del acusado, movida por pasión, prejuicio y parcialidad y que cometió error al aplicar la ley a los pocos hechos probados en este caso. En apoyo de su contención, el acusado alega que es indispensable probar la paternidad a la luz de los requisitos del artículo 125 del Código Civil de Puerto Rico, ed. de 1930, antes de recurrir al castigo de alimentos o cárcel y que el ministerio fiscal no probó su caso, según la jurisprudencia sentada en el caso de *Vázquez* v. *De Jesús*, 65 D.P.R. 900.

La única testigo de El Pueblo lo fué Pura García, abuela del menor Horacio Rodríguez, cuyo abandono se alega. Esta declaró que su hija Carmen María Rodríguez, madre del menor, murió hace más de tres años; que al morir, su hija

vivía con ella, pero anteriormente había vivido con el acusado; que su hija y el acusado vivían como marido y mujer en una habitación en la Calle de la Cruz en Juana Díaz; que viviendo con el acusado su hija quedó encinta y estando embarazada el acusado ingresó en el ejército; que el niño nació en 1941, después de ingresar el acusado en el ejército; que cuando el niño tenía alrededor de un año un mes de edad, su hija se fué a vivir con ella por encontrarse abandonada; y que el acusado, mientras estuvo en el ejército le daba dinero a su hija de su bolsillo, pero que en la actualidad no le pasa cantidad alguna al menor, quien vive con la testigo.

La defensa solicitó la absolución perentoria del acusado por el fundamento de que no se habían probado los hechos de la acusación y porque la prueba aducida por El Pueblo no era suficiente para condenar al acusado por el delito que se le imputaba. Dicha moción fué declarada sin lugar. La prueba de descargo, consistente en las declaraciones de Zoilo Mendoza, Luis Magín, Gabriel Torres y Celedonio Bonilla, tendió a demostrar que Carmen María Rodríguez vivía en la Calle de la Cruz, de Juana Díaz, en una habitación que le tenía alquilada Zoilo Mendoza; que ésta fué expulsada por Mendoza de dicha habitación porque "tenía un radio, celebraba fiestas y entraba y salía mucha gente de allí"; que el acusado ingresó en el ejército el 27 de marzo de 1941 y fué licenciado el día 9 de diciembre de 1945; que el acusado nunca fué visto visitando la habitación de la madre del menor, ni que tuviese relaciones con ella de clase alguna; que Celedonio Bonilla tuvo relaciones íntimas con Carmen María para marzo de 1941 y no notó entonces que ésta estuviera encinta y que para fines de 1941 ella vivía en concubinato con Félix Pérez, pero que para esta fecha ya había nacido el niño.

La corte inferior, una vez practicada la prueba, concluyó que "Aquí ha declarado la abuela de ese niño y dice que su hija salió de su casa con este señor con quien vivió; que viviendo con él dió a luz y cuando el niño estaba grandecito, ingresó en el Ejército de los Estados Unidos y nunca más

ha provisto nada para la alimentación de ese hijo; que cuando vivió con ella le daba algo, y aun después del Ejército le daba algo de su bolsillo a ella, ya que no le pasaban el cheque que el Gobierno tiene asignado para los hijos. La abuela dice que en vista de que no le pasaba, le mandó recados para que le pasara y entonces en definitiva lo llevó a la Corte. A los fines de la moción de *nonsuit* hay prueba de que este acusado es el padre de ese niño, que no lo ha alimentado y que se niega a darle los alimentos. Yo, como dije, había estudiado con gran detenimiento esta prueba, y yo creo que la misma establece de manera clara que el acusado es culpable y no tengo duda de que no lo sea.''

La prueba fué contradictoria y la Corte *a quo* dió entero crédito a aquélla ofrecida por El Pueblo. Siendo ésta suficiente, a nuestro juicio, para sostener la convicción, y no habiéndose demostrado la existencia de pasión, prejuicio o parcialidad por parte del juez sentenciador, no intervendremos en la apreciación que de dicha prueba hizo la corte inferior. *Pueblo* v. *Méndez,* ante, pág. 824.

Se queja el apelante de que ha sido condenado con el único testimonio de la denunciante Pura García. Ya hemos resuelto que en casos por abandono de menores el testimonio de un solo testigo, de ser creído, basta para condenar sin necesidad de que esté corroborado. *Pueblo* v. *Bernabe,* 63 D.P.R. 400; *Pueblo* v. *Cáceres,* 65 D.P.R. 368.

En cuanto a la contención del acusado de que hay que probarse, en un caso como el de autos, la paternidad a la luz de los requisitos del artículo 125 del Código Civil, citando el caso de *Vázquez* v. *De Jesús,* ésta carece de méritos. Dicho caso no es criminal, como el que nos ocupa, sino civil. Sobre este particular, en el caso de *El Pueblo* v. *Rodríguez,* ante, pág. 735, dijimos:

''En verdad, la prueba requerida en casos de filiación debe ser y es distinta a la exigida en aquéllos en que tan sólo se reclaman alimentos para un menor. En los primeros es indispensable dar cumplimiento a lo preceptuado por el artículo 125 del Código Civil... Empero,

en casos de alimentos o de abandono y descuido de menores, conforme ya hemos dicho y según ha sido resuelto por este Tribunal en los numerosos casos ya citados, basta con que haya prueba de la paternidad para que el derecho a los alimentos sea indubitado, siempre que se demuestre además, por supuesto, que el menor tiene necesidad de ellos y que el padre está en condiciones de suministrárselos.''

Véase, además, a este mismo efecto el caso de *El Pueblo* v. *López,* ante, pág. 780.

■■ No se han cometido los dos primeros errores. Como tercer señalamiento el acusado apelante alega que ''La Corte erró al admitir incondicionalmente testimonio oral para probar la muerte de la madre del menor—sin que el ministerio fiscal primeramente probara y justificara la no existencia de la partida de defunción certificada expedida por el Registro Demográfico Insular. Igualmente erró la corte a quo al admitir, como admitió en evidencia, a pesar de la objeción del denunciado, la partida eclesiástica del nacimiento del niño cuya paternidad se investiga, sin que el Fiscal hubiera en primer término justificado o explicado legalmente la no existencia de la partida de nacimiento certificada, expedida y autorizada por el Registrador Demográfico Insular.''

Indiscutiblemente la mejor evidencia para probar la muerte de un ser humano lo es el certificado de defunción, pero esto no significa que se excluya cualquier otra prueba tendiente a demostrar ese hecho. Puede probarse la muerte por cualquier otra prueba directa. En el presente caso Pura García declaró que vió a su hija muerta y estuvo en su entierro, de modo que esta evidencia es admisible como prueba directa del hecho del fallecimiento.

■ Discutiremos ahora la segunda parte de este señalamiento. Arguye el apelante que la jurisprudencia establece el modo y manera que debe seguirse para probar los documentos oficiales y cita en apoyo de su argumento el artículo 431 de la Ley de Enjuiciamiento Civil, edición de 1933.

La partida de bautismo aquí aludida fué presentada en evidencia luego de haber declarado la abuela del menor al

efecto de que el niño era hijo de Carmen María Rodríguez, nacido como consecuencia de las relaciones de ésta con el acusado y que el niño había nacido en 1941. Con la oposición de la defensa se admitió la partida de bautismo en evidencia. El hecho esencial en este caso, o sea, el nacimiento del menor como fruto de las relaciones de Carmen María y el acusado, fué establecido por el testimonio de Pura García. Aceptando, sin resolverlo, que la partida de bautismo no era admisible, su admisión no fué perjudicial puesto que, como hemos dicho, hubo prueba adicional, a la cual la corte dió crédito, que tendía a probar los mismos hechos a que se refería la partida de bautismo. *Pueblo* v. *Méndez,* supra; *Pueblo* v. *Avilés,* 66 D.P.R. 290. Tampoco se han cometido estos errores.

*Procede confirmarse la sentencia apelada.*