LEONCIA VÁZQUEZ DE SILVA y JUAN VÁZQUEZ BOYRIÉ, demandantes y apelantes, *v.* LA SUCESIÓN DE CÁNDIDO DE LOS SANTOS BOYRIÉ, compuesta por su viuda doña FERNANDA MARIÑO y sus sobrinos AGUSTÍN e ISABEL LEDEÉ, demandada y apelada.

Núm. 7389.—*Sometido:* Junio 9, 1937.   *Resuelto:* Marzo 24, 1938.

·*Pedro E. Anglade,* abogado de los apelantes; *José J. Aponte* y *José C. Aponte,* abogados de la apelada.

El Juez Presidente Señor Del Toro emitió la opinión del tribunal.

El presente es un pleito de filiación fallado en contra de los demandantes. Éstos, Leoncia Vázquez de Silva y Juan Vázquez Boyrié, alegaron en su demanda que eran hijos de Cándido de los Santos Boyrié, fallecido en junio 10, 1929, procreados en las relaciones maritales que su padre tuvo con Rafaela Vázquez durante los años que precedieron al 1899, siendo los padres a la fecha del nacimiento de los hijos, solteros, y estando en condiciones de poder contraer matrimonio por no existir para ello impedimento legal alguno.

Alegaron además que su padre los reconoció pública y continuamente como hijos suyos, les dió todo lo necesario para su subsistencia y los llevó a vivir a la casa de su madre Adelaí Boyrié y cuando en 1899 contrajo matrimonio con la demandada Fernanda Mariño, trasladó a su casa a Juan a quien siguió tratando como hijo e instó a llevar su apellido cuando llegó a los diez o doce años de edad, inscribiéndolo en la escuela como tal y teniéndolo en su compañía hasta los diez y seis años en que el hijo se retiró voluntariamente del lado del padre; y que Leoncia permaneció con su abuela paterna hasta la muerte de ésta, yendo entonces a vivir con su padre donde fué tratada privada y públicamente como hija hasta que se separó para contraer matrimonio.

La demanda contiene una segunda causa de acción en la que se reproducen los hechos de la primera y se alega además que al fallecer el padre dejó bienes por valor de treinta y cinco mil dólares.

Se pide finalmente sentencia declarando a los demandantes hijos naturales reconocidos de Cándido de los Santos Boyrié, con derecho a llevar su apellido y a percibir la porción hereditaria que determina la ley.

Contestó la demandada Fernanda Mariño aceptando que ella compone la Sucesión de Cándido de los Santos y negando que los otros demandados fuesen miembros de la misma. Negó también específicamente los hechos de la primera causa

de acción.   En cuanto a la segunda alegó que los bienes here-
ditarios sólo ascendían a cinco mil dólares.   Como defensa
especial alegó que su marido era impotente.   Pidió que la
demanda fuera declarada sin lugar con costas.

Fué el pleito a juicio practicándose una larga prueba por
ambas partes.   La transcripción de ella llena más de quinien-
tas páginas del récord.   En la relación del caso y opinión en
que funda su sentencia el juez de distrito hace una amplia ex-
posición de las alegaciones y luego de fijar la fecha del naci-
miento de los demandantes en 1890 y 1892, cita la ley aplicable
al caso, a saber, el artículo 135 del Código Civil Español que
regía en esos años en esta isla, y que dice:

"El padre está obligado a reconocer al hijo natural en los casos si-
guientes:

"1. Cuando exista escrito suyo indubitado en que expresamente re-
conozca su paternidad.

"2. Cuando el hijo se halle en la posesión continua del estado de
hijo natural del padre demandado, justificada por actos directos del
mismo padre o de su familia.

"En los casos de violación, estupro o rapto, se estará a lo dispuesto
en el código penal en cuanto al reconocimiento de la prole." .

Luego declara:

"De la evidencia aportada por las partes en este caso podemos dar
como hechos probados por la misma que los demandantes Leoncia Váz-
quez de Silva y Juan Vázquez Boyrié son hijos naturales de Rafaela
Vázquez, y nacieron, como ya hemos dicho, en 12 de septiembre de
1890, la primera, y en 8 de febrero de 1892, el segundo.

"Que los demandantes siendo niños vivieron en casa de doña
Adelaí Boyrié, madre de Cándido de los Santos Boyrié, en cuya casa
recibían alimento, vestido y educación, siendo sostenida dicha casa
por don Cándido de los Santos Boyrié, quien atendía a todas las ne-
cesidades de la misma.

"Que don Cándido de los Santos Boyrié contrajo matrimonio
con doña Fernanda Mariño en 3 de febrero de 1899, yéndose el
menor Juan Vázquez Boyrié a vivir con dichos esposos en cuya
casa permaneció hasta la edad de 17 ó 18 años en que se fugó para
trabajar por su cuenta.

"Que la otra demandante Leoncia Vázquez vivió con doña Adelaí Boyrié, quedándose con dicha señora aún después del matrimonio de don Cándido de los Santos Boyrié, hasta que la referida doña Adelaí Boyrié murió, recibiendo en dicha casa alimento, vestido y educación, los que le eran facilitados por don Cándido de los Santos Boyrié, y que allí tanto ella como el otro demandado Juan Vázquez Boyrié eran tratados como hijos de don Cándido de los Santos Boyrié, tanto por éste como por su madre, la referida doña Adelaí Boyrié."

Invoca entonces la jurisprudencia de las Cortes Supremas de España y Puerto Rico que establece que la prueba en casos de esta naturaleza debe ser clara y convincente y no obstante la declaración de hechos probados que hiciera, termina concluyendo:

"Y estas consideraciones nos llevan a la convicción de que la prueba presentada en este caso no demuestra de una manera clara y convincente el propósito que tuviera Cándido de los Santos Boyrié de poner a los demandantes en la posesión del estado de hijos naturales, ya que si tal propósito hubiera existido por parte del supuesto padre, éste al abandonar ellos el hogar en que residían los hubiera procurado, tratando de hacerlos volver a su compañía y no prescindir de ellos en absoluto como lo hizo, lo cual, a nuestro juicio, demuestra que nunca en el ánimo de Cándido de los Santos Boyrié existió el propósito de poner a los demandantes en la posesión del estado de hijos naturales."

Las consideraciones a que se refiere la corte son los pasajes que transcribe de los casos de *Morales* v. *Sucesión Cerame,* 30 D.P.R. 843; *Torres* v. *Sucesión Caballero,* 39 D.P.R. 724; *Vega* v. *Sucesión Vega,* 32 D.P.R. 595 y *Montalvo* v. *Montalvo et al.,* 25 D.P.R. 858, y las que siguen:

"Y el Tribunal Supremo de España en otra sentencia de fecha más reciente, o sea de 12 de octubre de 1907, se expresa en la siguiente forma:

" 'Esta posesión de estado, consistente en el concepto público en que es tenido un hijo con respecto a su padre natural, ha de revelarse necesariamente, según doctrina del Tribunal Supremo, por actos directos que demuestren con evidencia la voluntad libre y espontánea del padre, o de su familia en su caso, de tener como hijo

natural al que pretenda su reconocimiento y acrediten cumplidamente la continuidad de la posesión, o sea que el hijo mantiene con aquél, y como tal hijo, relaciones constantes y no interrumpidas, no siendo legal confundir actos que puedan revelar más o menos la presunción o convencimiento en que una persona está de su paternidad con relación a hijos naturales, con los que demuestren su propósito de poner a estos hijos en la posesión de tal estado.'

"Si analizamos la prueba presentada en este caso, veremos que la continuidad de la posesión de estado a que hace referencia esta doctrina no existe en el caso que nos ocupa, ya que nos encontramos con dos grandes lagunas en las relaciones del padre con los hijos, una en los momentos del nacimiento de éstos y en los primeros años de su vida, y otra después que los demandantes abandonan el hogar en que vivían y no vuelven a ocuparse para nada de la existencia de su supuesto padre.

"Nos hubiera gustado el saber las relaciones que existieron entre don Cándido de los Santos Boyrié y los demandantes cuando ellos comenzaban la vida con el fin de poder determinar de una manera clara y evidente el por qué los demandantes siendo niños fueron llevados a la casa de doña Adelaí Boyrié.

"¿Se debió este traslado a que ellos eran hijos del Sr. Boyrié? ¿Fué esto un acto de generosidad del mismo? ¿Se debió la actuación de Boyrié a prestar su ayuda a una persona que él quería mucho? En fin, nada sabemos de las causas que pudieran determinar a Boyrié a llevarse consigo los muchachos.

"Sabido es que existen muchas personas y matrimonios que encontrándose sin hijos y solos en la vida prestan su cuidado y protección a niños menores de edad aún en los primeros años de su vida, llevándolos a su hogar, alimentándolos, educándolos, queriéndolos como hijos y procurando en un todo la felicidad de éstos, y eso es lo que se conoce en Puerto Rico con el nombre de padres e hijos de crianza.

"Además, los demandantes abandonaron el hogar de Cándido de los Santos Boyrié cuando alcanzaban la edad de 18 a 20 años, el supuesto padre no los procuró, no trató de hacer que volvieran a su hogar, dejándolos abandonados por completo, y asimismo los hijos no se ocuparon de Cándido de los Santos Boyrié para nada, sin tratar de enterarse de la salud de éste, ni aún en los últimos años de su vida ni en los momentos de su muerte acudieron a recibir la bendición de aquel hombre que, siendo o no su padre, los había amparado, dándoles todo lo necesario para la vida y queriéndolos como un padre.

"De la fecha en que los demandantes abandonan el hogar de Cándido de los Santos Boyrié a la fecha de la muerte de éste ocurrida en 9 de junio de 1929, han transcurrido alrededor de 18 a 20 años. No hicieron nada los demandantes durante este tiempo para reclamar su filiación. Si así lo hubieran hecho hubiéramos tenido la oportunidad de oír a Cándido de los Santos Boyrié y de poder formar una opinión más exacta de los hechos en este caso. Esperan la muerte de éste y entonces los que no tuvieron para Cándido de los Santos ni una palabra de gratitud y de afecto, acuden ante esta Corte buscando no un apellido, no un nombre y sí únicamente una porción de la herencia del causante de la sucesión demandada."

En cuanto a la defensa de impotencia, dijo la corte:

"Se ha presentado aquí evidencia por la parte demandada para sostener la defensa que levantara en su contestación, es decir, que Cándido de los Santos Boyrié, a la fecha de la concepción de los demandantes, era estéril para la procreación, pero la prueba aportada, a nuestro juicio, no demuestra que al tiempo del nacimiento de los demandantes, Cándido de los Santos Boyrié estuviera padeciendo de hidrocele y que esa enfermedad hubiera llegado a un estado tan avanzado que lo incapacitara para la procreación."

No conformes los demandantes apelaron para ante esta Corte Suprema. Sostienen que la sentencia es contraria a la prueba y a la ley.

La evidencia fué contradictoria. Como sabemos, la demandada negó en absoluto las alegaciones de la demanda y su prueba tendió a demostrar que los demandantes no eran hijos de Cándido de los Santos si que de Bernardo Camacho. La corte, como también sabemos, declaró probado que en la casa de la señora Boyrié los demandantes "eran tratados como hijos de don Cándido de los Santos Boyrié, tanto por éste como por su madre, la referida doña Adelaí Boyrié." No dijo como hijos de crianza o adoptivos, sino simplemente hijos. Y con ello resolvió, a nuestro juicio, en lo fundamental, el conflicto en pro de los demandantes.

Fué después, cuando trató de razonar su conclusión final declarando sin lugar la demanda, influída por la rigidez de la jurisprudencia que enfatizó en su más lejano alcance, que

expuso su temor de que al recoger y sostener los niños hubiera actuado Boyrié por un impulso generoso y no por un mandato de su conciencia de padre, y que se fijó en las ''dos grandes lagunas'' que· se advierten ''en las relaciones del padre con los hijos, una en los momentos del nacimiento de éstos y en los primeros años de su vida, y otra después que los demandantes abandonan el hogar en que vivían y no vuelven a ocuparse para nada de la existencia de su supuesto padre.''

Examinemos la prueba.

Alberto García, amigo de la infancia y compañero de trabajo de Cándido de los Santos Boyrié, casado con una prima suya, declaró que conoció a Cándido y a Rafaela Vázquez, quienes tuvieron relaciones maritales. Se opuso la parte demandada por su abogado y el juez no permitió que el testigo declarara sobre el concubinato por no ser fundamento de la acción de acuerdo con la ley reguladora del caso. Luego de varias objeciones, quedó al fin en el récord lo que sigue:

''P.—¿De manera que usted conoció a Rafaela Vázquez? R.—Sí, señor. P.—¿Y a Cándido de los Santos Boyrié? R.—Sí, señor. P.—¿Ellos tuvieron hijos? R.—Sí, señor. P.—¿Quiénes son los hijos que ellos dos tuvieron? R.—Pues Leoncia Vázquez y al hermano, el joven. P.—¿Juan? R.—Juan.

Repetidamente manifestó el testigo que Cándido de los Santos trataba a los demandantes como hijos pública y privadamente, que vivían en casa de su ''abuela,'' madre de Cándido, y él los tenía como parientes de su señora.

Otro testigo, Eligio Solier, albañil como Cándido y amigo íntimo suyo y en cuya casa convaleció de una enfermedad, declaró que los demandantes recibían en la casa el tratamiento de hijos.

En igual sentido se expresó Eduardo Soto, y Margarita Rivera, sobrina de Cándido, dijo que los demandantes son sus primos ''porque eran hijos de mi tío don Cándido de los Santos,'' a quienes conoció ''viviendo en la casa de él bajo el techo de él y su señora.''

Adelina Estrada, de más de sesenta años, amiga de Cándido desde niña, y su comadre después, que visitaba la familia, vió a los demandantes viviendo en la casa de la abuela materna primero, luego de la paterna, y por último en la propia casa de Cándido ya casado con la demandada donde los trataban "como hijos que eran, muy bien, yo siempre vi buen trato para ellos, educación y todo bueno, como hijos que eran pues los trataban como sus hijos que eran y la madrastra igual, como sus hijos de crianza que eran. P.—¿Hijos de crianza de quién? R.—De doña Nanda y los criaba, y él como buen padre siempre les daba bueno todo."

Pablo Pillot, que conoció a Cándido desde que tuvo uso de razón, declaró ampliamente sobre el tratamiento de hijos que recibían los demandantes de Cándido. Refiriéndose a la época en que las buenas relaciones de los hijos con el padre estaban rotas, dijo que estuvo ausente de Guayama y al regresar "fuí a la casa donde vive doña Nanda ahora, al lado de don Guillermo Garáu, cambiamos impresiones y entonces le pregunté por Juan y Oncita y dice: 'Mira, tú sabes que Juan se fué hace algún tiempo y ahora últimamente se fué Oncita' y yo repliqué: '¿Por qué?' y dice: 'Porque se enamoró de un musié que no me gusta y yo si estoy trabajando es para ellos que son mis hijos y no para ningún vago' y digo: '¿Pues, quién es ése?' y dice: 'Silva el zapatero;' '¿Y dónde está Oncita?' . . . . . 'Pues ella está en Aguirre con Juan.' "

Y luego, muerto ya Cándido, refirió una conversación que tuvo con la demandada, como sigue:

"R.—Yo le dije a doña Nanda: Mire Nanda, tengo conocimiento de que se dice . . . . que Juan y Oncita no son hijos del musié; usted sabe que eso no es cierto . . . . R.—Me dice: 'Ay Pablo, a veces le hacen hacer a uno cosas tremendas' y yo le dije: Pues mire a ver si nosotros zanjamos eso, si encontramos una fórmula, un medio para zanjar esto amigablemente . . . . P.—¿Quedaron ustedes en algo? R.—Sí, de vernos después de almuerzo para buscar una fórmula y entonces yo le dije: Como a las dos de la tarde yo estaré de regreso y efectivamente a esa hora yo regresé y entonces ella no me recibió . . . . P.—¿Pero cuando usted habló con ella, hablaron us-

tedes de los muchachos? R.—Sí, como no, yo le dije: déles algo. P.—¿Aceptó? R.—Sí, señor, ella convino en eso. P.—¿Convino en qué, qué es eso? R.—En arreglar con los muchachos. P.—¿Por qué iba a arreglar con ellos? R.—Porque sabía que ellos eran hijos de él. P.—¿De quién? R.—De Cándido, y yo le dije: Usted bien que lo sabe, y ella me dijo: 'Sí, yo lo sé, pero a veces le hacen hacer a uno cosas que no debe; entonces ella bajó la cabeza y me dijo: después de almuerzo, cualquier cosa, si ellos lo aceptan . . . .'; yo no había visto a Juan ni a Oncita, fuí para evitar un pleito.''

Francisco Boyrié, pariente de Cándido, dijo que éste quería que se casara con su hija ''Oncita'' para que ''el capital se quedara dentro de la familia'' y reiteradamente manifestó que Juan y Oncita, los demandantes, eran tratados como hijos por Cándido.

Esto aparte de las declaraciones de los demandantes que son amplísimas y de las de Domingo Silva, que se casó con Leoncia a disgusto de su padre, teniendo Leoncia que fugarse de la casa paterna para ello, y Francisco Torregrosa, que quiso interceder con Cándido para que permitiera que su hija se casara con Silva, sin resultado, porque Cándido consideró que Silva no estaba en condiciones económicas de casarse con su hija.

A nuestro juicio la prueba es clara y convincente. Muestra que los demandantes disfrutaron del estado de hijos naturales reconocidos de Cándido de los Santos Boyrié por muchos años.

Las lagunas que advierte el juez se explican. Si no hubo más detalles de las relaciones maritales entre Boyrié y la madre de los demandantes y de la vida de éstos en los primeros años de su niñez, se debió al propio juez sentenciador que resolviendo la cuestión en pro de la objeción de la demandada no permitió que se declarara sobre el concubinato de los padres, y si durante los últimos años de la vida del padre no hubo relaciones estrechas entre él y los hijos, se debió seguramente a los disgustos habidos y a la manera como ambos salieron del hogar en que por tantos años vivieron.

Parece que el padre fué uno de esos artesanos laboriosos que acumulan a fuerza de trabajo y persistencia una pequeña fortuna que miran luego como el fruto más preciado de su vida. Tuvo en sus años jóvenes relaciones ilícitas con una mujer y no abandonó los seres que nacieron de ellas. La mujer siguió su vida y él llevó sus hijos a la casa materna donde vivía también una joven, la demandada, con la que luego contrajo matrimonio, llevándose el varón a vivir con él en seguida y luego la hembra cuando la abuela murió. No sembró en terreno fértil quizá. Los disgustos surgieron y los hijos con razón o sin razón dejaron o abandonaron al padre. El encono subsistió y los años transcurrieron sobreviniendo la muerte del padre sin que se hubieran restablecido las relaciones de antaño.

La falta de reconciliación no implica la pérdida del estado que se había conferido de una parte y adquirido de otra. La actitud del padre al no reconocer a sus hijos por escrito antes de morir, no destruye su anterior actuación.

Creemos en verdad que el juez de distrito estuvo influído por lo rígido de la jurisprudencia en materia de prueba en estos casos y por lo que él estimó como mala conducta de los hijos. De otra suerte, dados los hechos que declaró probados, no se hubiera detenido y hubiera llegado hasta la inevitable consecuencia que se derivaba de la existencia de tales hechos, a saber, una sentencia que reconociera a los demandantes de manera auténtica y fehaciente su condición de hijos naturales reconocidos de Cándido de los Santos Boyrié con derecho a llevar el apellido de su padre y a disfrutar de su herencia en la porción que determina la ley.

*Y ésa es la sentencia que deberá dictarse en sustitución de la dictada que se revocará, sin especial condenación de costas.*

El Juez Asociado Señor Wolf disintió.*

El Juez Asociado Señor Córdova Dávila no intervino.

---

* Nota: Véase el prefacio.