JULIA LIBERATA SALAS, conocida por NELLY SALAS, demandante y apelante, *v.* JOHN DOE y RICHARD ROE, como herederos de DOMINGO TORRÉNS DÍAZ, demandados y apelados; JULIO DOMINGO SILVA TORRÉNS, interventor.

Número 11100.

*Sometido:* 5 de noviembre de 1953. *Resuelto:* 24 de diciembre de 1953.

*Félix Ochoteco Jr., Manuel Torres Reyes* y *Ernesto Juan Fon-frías,* abogados de la apelante; *José Sabater,* Administrador Judicial y abogado y representante de la herencia, *pro se; Hon. Secretario de Justicia José Trías Monge* y *Aurelio Torres Braschi, Edgar S. Belaval* y *M. Rodríguez Alberty, Procuradores Auxiliares,* abogados de El Pueblo, apelado; *Enrique Báez García,* abogado del interventor.

EL JUEZ ASOCIADO SEÑOR MARRERO emitió la opinión del tribunal.

Fundada en el concubinato de sus padres y en haber disfrutado de la posesión continua del estado de hija natural del causante de los demandados, Julia Liberata Salas, conocida por Nelly Salas, interpuso demanda de filiación contra John Doe y Richard Roe, en su carácter de herederos desconocidos de Domingo Torréns Díaz. Alegando la no existencia de tales herederos, el Pueblo de Puerto Rico se personó en autos en armonía con lo dispuesto por los artículos 912 y 913 del Código Civil, edición de 1930.([1]) El administrador judicial de los bienes del finado, previamente designado al efecto por

---

([1]) Los artículos 912 y 913 del Código Civil, edición de 1930, rezan así:

"Artículo 912.—A falta de personas que tengan derecho de heredar, conforme a lo dispuesto en las precedentes secciones, heredará El Pueblo de Puerto Rico, destinándose los bienes al 'fondo de la universidad.'

"Artículo 913.—Para que El Pueblo de Puerto Rico pueda apoderarse de los bienes hereditarios habrá de preceder declaración judicial de heredero, adjudicándole los bienes por falta de herederos legítimos."

el propio tribunal que entendía en la acción de filiación, también compareció en autos y, al igual que El Pueblo, se opuso a las pretensiones de la demanda. Trabada así la contienda, celebróse el juicio de rigor. Sometido el caso para su decisión, el tribunal al resolverlo declaró sin lugar la demanda, dictando una razonada opinión en la cual figuran las siguientes conclusiones de hechos:

"1. Domingo Torréns Díaz falleció abintestato en Mayagüez, Puerto Rico, el día 26 de octubre de 1949, sin parientes conocidos, estando los bienes que dejó a su fallecimiento bajo administración judicial.

"2. Durante los años 1913 y 1914 y en la ciudad de Mayagüez Domingo Torréns Díaz, soltero, sostuvo relaciones sexuales con Ana Luisa Salas, divorciada, habiendo nacido, como resultado de dichas relaciones, el día 17 de agosto de 1914, la ahora demandante Julia Liberata, la que con dicho nombre fué inscrita en el Registro Civil de Mayagüez como hija natural de su citada madre.

"3. Durante el referido período Ana Luisa Salas vivió primeramente en una habitación de un ranchón propiedad de Joaquín Tornabel en la Playa de Mayagüez y luego en una casa en el sitio denominado 'El Tablón' de la propia playa de Mayagüez donde nació la demandante. Durante todo dicho período Torréns mantenía a Ana Luisa Salas, visitándola y teniendo con ella relaciones sexuales. Ello no obstante y durante todo el tiempo que duraron dichas relaciones Torréns vivía en casa separada, en la Calle Concordia, en el sitio conocido por 'La Puntilla' de la ciudad de Mayagüez, en compañía de su señora madre.

"4. Desde el nacimiento de la demandante y hasta que ésta tenía cuatro años de edad en que Ana Luisa Salas se ausentó con la niña de Mayagüez, la citada demandante se halló en posesión continua del estado de hija natural de su citado padre manifestada por actos de éste, consistentes los mismos en pagar los gastos de su nacimiento, en atender a sus necesidades económicas, presentarla en público como su hija, pasearla consigo y aceptar en diferentes ocasiones y a diferentes personas ser el padre de la demandante. (²)

---

(²) Sobre la posesión de estado de la demandante, el tribunal a quo dice nuevamente en sus conclusiones de derecho:

"5. Ana Luisa Salas contrajo matrimonio en el pueblo de Cataño, donde fué a vivir cuando se ausentó de Mayagüez con su hija, con Leandro Ramírez Pagán el día 27 de mayo de 1920 habiendo fallecido luego la madre entre los años 1925 y 1930 en la ciudad de Mayagüez, sin que la propia hija pueda precisar la fecha exacta.

"6. Desde que la demandante tuvo uso de razón, o sea, según ella desde que tenía seis años de edad, fué conocida y llamada por el nombre de Nelly *Ramírez* Salas, habiendo continuado usando tales nombre y apellidos continua e ininterrumpidamente en toda ocasión, en todos los actos de su vida, pública y privadamente; matriculándose con ellos en las escuelas e inscribiéndose en dos ocasiones, para las elecciones generales de 1936 y 1940,(3) con dichos nombres y apellidos y haciendo figurar además en estas dos últimas ocasiones como sus padres a Leandro Ramírez Pagán y Ana Luisa Salas; y así también la demandante usó en el campo de los negocios y en relación con una mueblería que poseía en el pueblo de Cataño el nombre y apellido de Nelly Ramírez, apellido éste con el cual inscribió, como el materno, los hijos que dicha demandante tuvo con Manuel Rivera Miranda al igual que lo hizo figurar como su apellido en la notificación de defunción de dicho Manuel Rivera Miranda en el Registro Demográfico.

"7. La demandante en todo momento tuvo en el orden de sus afectos a dicho Leandro Ramírez como su padre, ya que desde que tenía seis años de edad, siempre recibió de éste el cariño y la protección de un padre, habiendo la demandante continuado, aún luego de haber tenido conocimiento que aquél no era su padre, usando su apellido y figurando como su hija en prueba de gratitud por lo que el mismo había hecho por ella."

En sus conclusiones de derecho el tribunal sentenciador se expresa en parte así:

"La prueba del caso no demuestra que Ana Luisa Salas viviese en concubinato con Domingo Torréns Díaz durante el embarazo y al tiempo del nacimiento de la demandante . . .

"La prueba del caso tampoco demuestra que la demandante se hallase durante la vida del causante en la posesión continua del

---

"Es cierto que desde su nacimiento hasta que tenía cuatro años de edad la demandante disfrutó del estado de hija natural de Domingo Torréns Díaz."

(3) Debe decir "1936 y 1944."

estado de hija natural del mismo dentro del alcance del apartado 2 del artículo 125 del Código Civil, ed. 1930.

" . . . . . . .

"... tal estado de hija natural lo perdió la demandante desde la edad de seis años en que comenzó a figurar como hija de Leandro Ramírez Pagán, usando el apellido de éste y dándoselo a sus propios hijos ... en el caso de autos no son las actuaciones del padre las que destruyen el estado de hija natural previamente creado a favor de la demandante sino que son las propias actuaciones de ésta ... Por otro lado, debe concluirse que el período de cuatro años durante el cual la demandante disfrutó de su estado de hija natural del causante, no es el período razonable a que se refiere la jurisprudencia si lo consideramos en relación con el período de más de treinta y tres años durante el cual la demandante no solamente no se halló en tal estado de hija natural del finado sino que por el contrario y durante todo dicho período figuró como hija de otro, continua e ininterrumpidamente."

La demandante sostiene en apelación que el tribunal sentenciador erró al resolver (1) que ella no se halló durante la vida de su padre en la posesión continua del estado de hija natural de éste dentro del alcance del apartado 2 del artículo 125 del Código Civil; (2) que no obstante haber disfrutado del estado de hija natural de su padre hasta que tenía cuatro años de edad, tal estado fué perdido por ella desde la edad de seis años en que empezó a figurar como hija de Leandro Ramírez Pagán; (3) que si bien era cierto que ella había ganado por actos de su padre el estado de hija natural de éste, tal estado lo perdió desde que tenía seis años de edad por razón de actuaciones, no de su padre y sí de la propia hija; (4) que ella sólo gozó del estado de hija natural por cuatro años y que dicho término no es el período razonable de continuidad a que se refiere el artículo 125 ya citado y la jurisprudencia; y (5) que la madre y el padre de ella no vivían en concubinato durante el embarazo de aquélla y al tiempo de su nacimiento.

 Al igual que lo hace la apelante, discutiremos conjuntamente los primeros cuatro errores señalados. El tribunal a quo sin duda erró al concluir que si bien desde su na-

cimiento y hasta que tuvo cuatro años de edad, cuando su madre se ausentó con ella de Mayagüez, la demandante disfrutó de la posesión continua del estado de hija natural de su citado padre, manifestado tal estado por actos de éste, las actuaciones posteriores de ella le privaron de su derecho a ser reconocida como hija natural de Domingo Torréns Díaz. Hay en los autos suficiente prueba tendente a sostener la conclusión del tribunal a quo al efecto de que durante los primeros cuatro años de su vida la demandante gozó de dicha posesión continua. (4) Mas, la cuestión fundamental a ser determinada en este pleito no es—como ocurre en la mayoría de los casos de esta naturaleza—si ella disfrutó o no de tal estado, sino si habiendo la demandante durante sus primeros cuatro años de vida disfrutado de tal posesión, sus actuaciones posteriores la privan de su derecho al reconocimiento que solicita. Es innecesario reseñar nuevamente en qué consistieron dichas actuaciones. Constan con toda claridad en el párrafo sexto

---

(4) Sobre la posesión de estado disfrutada por la demandante durante los citados cuatro años aparece en autos, entre otra, la siguiente prueba:

*Esperanza Martínez Maduro* declaró que Torréns Díaz era loco con la niña, "siempre la estaba mimando. Siempre venía con tonterías para ella."

*Encarnación González Soler de Ortiz* testificó que Torréns Díaz trataba a la niña como una hija; la agasajaba, la abrazaba, le hacía caricias, la cogía; "mimada como la primera hija" y "varias veces lo ví paseando con la niña . . . A los tres días de haber nacido esta niña me dió cuatro pesos para la comadrona."

*José María Aponte* manifestó que Domingo Torréns le dijo que tenía una hija en Ana Luisa Salas. Eso se lo decía a cada rato "porque había veces que yo estaba hablando con él, pasaba ella y la veía y la llamaba . . . A la muchacha, a la hija de él y le daba un vellón o un chavo . . . Yo le pregunté, '¿Ésa es hija tuya?; sí; se parece mucho; ¿por qué tú no te la llevas para tu casa?; la mamá no quiere dármela para que yo me la lleve para casa.'"

*Dominga Carrero vda. de Vals* declaró que Domingo Torréns admitía que ésa era su hija. La testigo le dijo—refiriéndose a la demandante— "Mira esa niña es tu hija." Él lo reconocía. "Sí, yo sé que es mi hija. ¿Por qué tú no le das nada? Porque . . . pero yo sé que es mi hija. Mira, dame para comprarle unos zapatitos." Me dió para comprarle los zapatitos. Después de eso seguía yendo a casa y le hablaba de la niña cuando lo veía en casa y después en otra oportunidad me dió un peso para comprarle unos zapatos." La niña tenía cuatro años cuando Ana Luisa (la madre) se la llevó de Mayagüez.

de las conclusiones de hechos del tribunal sentenciador. Pasaremos, por tanto, a discutir en seguida la cuestión que nos ocupa.

El artículo 125 del Código Civil, ed. 1930, dispone en lo esencial que:

"El padre está obligado a reconocer al hijo natural:

"...

"(2) Cuando el hijo se halle en la posesión continua del estado de hijo natural del padre demandado, *justificada por actos del mismo padre o de su familia.*" (Bastardillas nuestras.)

El contexto copiado no deja lugar a dudas de que la posesión continua del estado de hija natural habrá de estar justificada por actos del mismo padre o de su familia. La posesión de estado a que se refiere el anterior artículo consiste en el concepto público en que ha sido tenido el hijo en relación a su padre natural, cuando ese concepto se forma por actos directos del mismo padre o de su familia, demostrativos de un verdadero reconocimiento perfectamente voluntario, libre y espontáneo. *Vargas* v. *Jusino*, 71 D.P.R. 389, y casos citados a la página 394. Sentencias del Tribunal Supremo de España de 26 de junio de 1903 (95 Jur. Civ. 1021) y 24 de marzo de 1927 (174 Jur. Civ. 417). Para que tal posesión exista no es necesario que los actos de reconocimiento comiencen desde el día del nacimiento del que los reclama y se prolonguen hasta que se inicia la demanda. *Cruz* v. *Santiago*, 24 D.P.R. 108. Basta que esa posesión se disfrute por tiempo razonable. Los cuatro años transcurridos en este caso lo son. Y una vez que se ha materializado tal posesión las actuaciones posteriores del padre o de su familia no pueden hacer desaparecer el derecho así establecido. Tampoco puede hacerlo desaparecer cualesquiera actuaciones posteriores del que lo reclama. En verdad por disposición expresa del estatuto—véase el artículo 125, supra—al determinarse la posesión de estado los actos a ser probados, repetimos, han de serlos los del padre o los de su familia y no los del que reclama su filiación. Los actos

de éste nunca podrían dar lugar a tal estado, no importa cuáles fueren.

Si para la época en que la demandante tenía cuatro años de edad se hubiera iniciado una acción de filiación, fundada en posesión de estado, y la prueba que se hubiera aportado y que el tribunal hubiese tenido ante sí hubiera sido la que figura en este caso, o similar o idéntica a ella, no hay la menor duda de que una sentencia favorable a la demandante hubiera recaído en el pleito. Siendo ello así, no vemos por qué hoy día debamos llegar a conclusión distinta. Conforme dijimos en *Vázquez* v. *Sucn. Boyrié*, 52 D.P.R. 856, 865 "la falta de reconciliación no implica la pérdida del estado que se había conferido de una parte y adquirido de otra. La actitud del padre al no reconocer a sus hijos por escrito antes de morir, no destruye su anterior actuación." En *Bianchi* v. *Sucn. Bianchi*, 67 D.P.R. 594, 602, citamos con aprobación esas palabras. Y en *Toro* v. *Ríos*, 68 D.P.R. 760, 762, citando a *Colón* v. *Sucn. Tristani*, 44 D.P.R. 171, 181, dijimos que "una vez que esta serie de actos sea realizado por un período razonable de tiempo, el padre no debe estar autorizado para revocar por sus actuaciones posteriores el reconocimiento que antes hizo." Nos ratificamos en ese criterio. Si por sus actos posteriores el padre no puede estar autorizado para revocar el reconocimiento de un hijo hecho por él anteriormente, ¿cómo es posible que actos subsiguientes de la persona que interesa su reconocimiento destruyan tal estado de derecho?

Habiéndose cometido los primeros cuatro errores señalados y haciéndose por tal motivo imperativo revocar la sentencia apelada, no es menester discutir el quinto error señalado en relación con la existencia o inexistencia del concubinato.

*Se dictará sentencia revocando la apelada y declarando a la demandante hija natural reconocida de Domingo Torréns Díaz, con todos los derechos inherentes a tal condición.*